UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA,      )
          Plaintiff,           )
                               )
v.                             ) Civil Action No. 03-12378-MLW
                               )
99-101 LONGFELLOW ROAD,         )
WORCESTER, MASSACHUSETTS,       )
          Defendant.           )
_____)
LOUIS THOMPSON,                )
          Claimant.            )
```

**MEMORANDUM OF LAW
IN SUPPORT OF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT**

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment in the above-captioned matter. As set forth below, because the United States has sustained its burden to show that 99-101 Longfellow Road, Worcester, Massachusetts (the "Defendant Property"), was used, or intended to be used, to facilitate the commission of narcotics violations, and because Claimant Louis Thompson has not asserted any affirmative defenses in this action, the United States is entitled to judgment as a matter of law.

1

## **PRIOR PROCEEDINGS**

The United States incorporates by reference its Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, filed herewith (the "56.1 Statement"). Fed.R.Civ.P. 10(c).

The United States filed its Complaint for Forfeiture In Rem (the "Complaint") against the Defendant Property on November 25, 2003, on the grounds that the Defendant Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7) as "real property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846, and/or 856." 56.1 Statement ¶ 3. On January 28, 2004, this Court found probable cause for forfeiture of the Defendant Property and issued the forfeiture Warrant and Monition, directing the United States Marshals Service to publish and serve the notice of forfeiture. Id. ¶ 4.

On May 10, 2004, Claimant Louis Thompson ("Thompson"), filed a claim in this action, as well as an answer to the Complaint (the "Answer"). Id. ¶¶ 5, 6. Thompson generally denied the substantive allegations of the Complaint, but he did not assert any affirmative defenses in his Answer, nor did he request a jury

trial.[1]  Id., Ex. 4.

## FACTS

In August 2003, a confidential informant ("CI1") began providing information to the Worcester Police Department Vice Squad Unit ("WPD Vice Squad") regarding illegal narcotics activity in Worcester.  56.1 Statement ¶ 9.  CI1 informed a member of the WPD Vice Squad that CI1 had been buying large amounts of rock (also known as "crack") cocaine from a Jamaican male CI1 knew as "Rat" for several months prior to August 2003.  Id. ¶ 10.  CI1 stated that "Rat" was supplying large amounts of crack cocaine to other smaller level cocaine dealers in Worcester.  Id. ¶ 11.  CI1 stated that it had purchased amounts of rock cocaine, packed in knot-tied plastic baggies, from "Rat" ranging from a quarter of an ounce to an ounce, at prices ranging from $250 to $1,000.  Id. ¶ 12.  CI1 also stated that "Rat" delivered cocaine using a gray Honda.  Id. ¶ 13.  CI1 would call "Rat" on his cell phone, (774) 249-3187 and "Rat" would meet CI1 at a predetermined location.  Id. ¶ 14.  "Rat" was positively identified by CI1 and through inquiries of the Massachusetts

---

[1] Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for GMAC Mortgage Corporation, also filed a claim in this action, on July 28, 2005.  The United States anticipates entering into a settlement agreement with MERS regarding its claim.

Registry of Motor Vehicles and the criminal records Master Card File as Claimant Louis Thompson ("Thompson"). Id. ¶ 15.

In August and September 2003, at the direction of officers from the WPD Vice Squad, CI1 engaged in four controlled purchases of narcotics from Thompson. Id. ¶¶ 21-47. Before each controlled purchase, CI1 contacted Thompson by cell phone and arranged for the purchase of cocaine at a location in Worcester. Id. ¶¶ 22, 27, 35, 42. Each time, CI1 was driven to the location by WPD Vice Squad officers, who established surveillance and observed Thompson arrive at the location and provide CI1 with crack cocaine in knot-tied baggies in exchange for United States currency. Id. ¶¶ 23, 24, 28, 31, 32, 36, 38, 39, 43, 46, 47.

During three of the controlled purchases, officers established surveillance of the Defendant Property before CI1 contacted Thompson to arrange for the purchase of cocaine. Id. ¶¶ 26, 34, 41. On each of those occasions, surveillance officers observed Thompson arrive at the Defendant Property after CI1 contacted Thompson by cell phone, leave the Defendant Property shortly thereafter, and then arrive at the location(s) where Thompson sold crack cocaine to CI1. Id. ¶¶ 29, 30, 31, 37, 38, 45, 46.

The WPD Vice Squad also received information from another confidential informant ("CI2") corroborating the information

provided by CI1. Id. ¶¶ 48-54. CI2 stated that it was buying cocaine from a Jamaican male known to CI2 as "Rat," and that CI2 would call (774) 249-3187 to arrange for cocaine purchases. Id. ¶¶ 49, 50. CI2 also stated that it had purchased cocaine from "Rat" out of the first-floor apartment at the Defendant Property, and that Rat had also delivered cocaine to CI2 in a gray Honda Accord. Id. ¶¶ 51, 52. CI2 positively identified "Rat" as Thompson. Id. ¶ 53. On August 26, 2003, CI2 stated that it had purchased cocaine from Thompson out of the first-floor apartment at the Defendant Property within the prior two weeks. Id. ¶ 54.

On September 9, 2003, based in part on the foregoing information, the Worcester District Court issued a search warrant for Apartment 1 of the Defendant Property, including, inter alia, all cellars and storage spaces associated with Apartment 1. Id. ¶ 55. On September 9, 2003, at approximately 10:40 p.m., members of the WPD Vice Squad executed the search warrant for the Defendant Property. Id. ¶ 56. Four males were discovered in the apartment: Patrick Gordon, Mark Stephens, Damian Campbell and Sean Barrett. Id. ¶ 57. During the search of the Defendant Property, officers recovered, among other things, a number of sandwich bags containing a white powder substance and a number of sandwich bags containing pieces of a rock-like substance; one Banknorth money envelope and other paperwork addressed to "Rat";

$36,511.00 in United States currency; narcotics distribution and packaging materials, including bottles of creatine and inositol powder, a Tanita scale, and sandwich-sized plastic bags, some with cut corners and some containing residue; three loaded firearms, including a .45 caliber Colt semiautomatic handgun and two .357 caliber Colt revolvers; ammunition; a cellular telephone and a pager; one "roach"; and one bag of green herbal substance. Id. ¶ 58.

The powder and rock-like substances seized from the Defendant Property were later analyzed, and certain samples were certified to contain cocaine. Id. ¶ 59. The total weight of the cocaine found at the Defendant Property was in excess of 69.7 grams. Id. ¶ 60. The "roach" and bag of green herbal substance were later analyzed and certified to contain marijuana. Id. ¶ 61.

Thompson, Gordon and Stephens, all of whom stated that they resided in Apartment 1 of the Defendant Property, were arrested during the execution of the search warrant and charged with various firearms possession charges, as well as one count of trafficking in cocaine between twenty-eight and ninety-nine grams. Id. ¶¶ 62, 63. On November 14, 2003, Thompson, Gordon and Stephens were each indicted on one count of distribution/possession with intent to distribute twenty-eight to

one hundred grams of cocaine, one count of possession of marijuana, four counts of unlawful possession of a firearm, one count of unlawful possession of ammunition, and four counts of illegally storing a firearm. Id. ¶ 64. These criminal cases currently are pending in Worcester Superior Court. Id. ¶ 65.

During his April 14, 2005 deposition in this action, Thompson admitted that he lived in the first floor apartment of the Defendant Property from 1993 through October or November 2003. Id. ¶ 20. Thompson also admitted that he was born in Jamaica and that his nickname is "Rat". Id. ¶¶ 16, 17. He also admitted that his business, Maytag Laundromat, has owned a Honda Accord since January 2003. Id. ¶¶ 18, 19. Through counsel, Thompson refused to answer any questions at his April 14, 2005 deposition regarding the factual basis for this forfeiture action, based on the Fifth Amendment to the United States Constitution. Id. ¶ 66.

**ARGUMENT**

A.  **Summary Judgment Standard.**

Summary judgment is appropriate in civil forfeiture cases where, as here, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Gaskell v. Harvard Cooperative Society, 3 F.3d 495, 497 (1st Cir. 1993); United

States v. One Parcel of Real Property, 900 F.2d 470, 473 (1st Cir. 1990) (affirming grant of summary judgment in civil forfeiture action where there were no genuine issues of material fact). When a party moving for summary judgment demonstrates that there is an absence of evidence to support the nonmoving party's position, "the burden shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the opponent." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

B.  **Burden Of Proof.**

The government asserts that the Defendant Property is forfeitable under 21 U.S.C. § 881(a)(7), which provides that the following shall be subject to forfeiture to the United States:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment.

To prevail in a forfeiture action under Section 881(a), the United States must establish, by a preponderance of the evidence, that the Defendant Property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

Where, as here, the government's theory of forfeiture is

that the Defendant Property was used to facilitate a crime, the government must establish a "substantial connection" between the Defendant Property and the offense. 18 U.S.C. § 983(c)(3); One Parcel of Real Property, 900 F.2d at 474. The "substantial connection" test requires only that the property was used, or intended to be used, to commit a crime, or must facilitate the commission of a crime. United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990).[2] Real property may be forfeited if it had "more than 'an incidental or fortuitous connection'" to criminal activity. United States v. One Lot of U.S. Currency ($36,634), 103 F.3d 1048, 1055 (1st Cir. 1997) (quoting United States v. 1933 Commonwealth Avenue, Newton, Massachusetts, 913 F.2d 1, 3 (1st Cir. 1990)). See also Schifferli, 895 F.2d at 990.

While CAFRA changed the United States' burden of proof regarding forfeitability from probable cause to preponderance of

---

[2] Section 983(c)(3) was enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000). Yet even prior to CAFRA, most courts, including the First Circuit, applied the "substantial connection" test to forfeitures of facilitating property. See, e.g., One Parcel of Real Property, 900 F.2d at 474; United States v. One 1986 Ford Pickup, 56 F.3d 1181 (9th Cir. 1995); United States v. Borromeo, 995 F.2d 23 (4th Cir. 1993); United States v. Real Property and Residence at 3097 S.W. 111th Avenue, 921 F.2d 1551 (11th Cir. 1991); United States v. Twelve Thousand Five Hundred and Eighty Five Dollars, 869 F.2d 1093 (8th Cir. 1989).

the evidence, CAFRA in no way precludes the grant of summary judgment in civil forfeiture proceedings. See House Passage of H.R. 1658, Floor Statements, 146 Cong. Rec. H2040-01, 2000 WL 368969 (Cong. Rec.), Proceedings and Debates of the 106th Congress, Second Session, Tuesday, April 11, 2000 ("This bill is not intended to limit the right of either party to bring a motion for summary judgment after the filing of the complaint pursuant to Fed. R. Civ. P. 56(a) or 56(b)."). Indeed, in a case such as this one - where claimant has offered no evidence to contradict the United States' assertions - summary judgment clearly is appropriate under any burden of proof.

C.  **The Evidence Establishes That The Defendant Property Is Forfeitable.**

In this case, the undisputed evidence establishes a substantial connection between the Defendant Property and the illegal conduct committed by Thompson. As noted above, 21 U.S.C. § 881(a)(7) requires forfeiture of any real property used to commit or facilitate the commission of a felony violation of Title 21. 21 U.S.C. § 841(a)(1) provides, in pertinent part, that it is unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to distribute or dispense, a controlled substance." A violation of 21 U.S.C. § 841(a)(1) involving less than 500 grams of cocaine is punishable

by imprisonment of up to twenty years. 21 U.S.C. § 841(b)(b)(1)(C). 21 U.S.C. § 856(a) provides, in pertinent part, that it is unlawful to "knowingly open, lease, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." A violation of 21 U.S.C. § 856(a) also carries a maximum sentence of twenty years imprisonment. See also 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

The evidence establishes that Thompson stored cocaine and narcotics distribution paraphernalia at the Defendant Property. In fact, almost seventy grams of cocaine were seized from the Defendant Property pursuant to the state search warrant in September 2003. This fact alone would warrant a finding that the Defendant Property was "substantially connected" to Thompson's criminal activity. United States v. Desmarais, 938 F.2d 347, 353 (1st Cir. 1991). While not deciding whether the civil "substantial connection" test applies to criminal forfeitures of facilitating property, the Court in Desmarais determined that the discovery of controlled substances and related paraphernalia in the basement of the property was enough to establish a

"substantial connection" between the property and the underlying offenses. Id.; see also United States v. 121 West Shore Drive, Exeter, Rhode Island, 974 F. 2d. 1329 (1st Cir. 1993) (evidence showing actual use of property to store drugs for later intended distribution sufficient to establish substantial connection). The facts clearly demonstrate that the Defendant Property served as a "base of operations" for Thompson's crimes, and therefore is substantially connected to his crimes. United States v. Heldeman, 402 F.3d 220, 222 (1st Cir. 2005) (apartment where doctor wrote prescriptions forfeitable even under civil "substantial connection" test, because it "served as a base of operations for his crime just as surely as does a residence where drugs are actually delivered or stored.") (citing Desmarais, 938 F.2d at 353).

The evidence further establishes that Thompson sold cocaine out of the first floor apartment at the Defendant Property. Coupled with the storage of narcotics at the Defendant Property, Thompson's sale of cocaine at the Defendant Property is sufficient to establish a "substantial connection" to his crimes. United States v. Premises Known as 3639-2nd St., 869 F.2d 1093, 1096 (8th Cir. 1989) (section 881(a)(7) requires something more than an "incidental or fortuitous" connection, but house where drug deal took place and where drugs and gun were stored

satisfied the test). In fact, the sale of drugs from a property alone constitutes a "substantial connection" between the property and narcotics distribution. See, e.g., United States v. One Parcel...7)79 Chilton County Road, 123 F. Supp. 2d 602, 607 (M.D. Ala. 2000) (use of property to negotiate two drug deals, and consummate one of them, satisfies substantial connection test), rev'd on other grounds, 270 F.3d 1331 (11th Cir. 2001); United States v. Two Parcels of Real Property...101 North Liberty Street, 80 F. Supp. 2d 1298, 1307 (M.D. Ala. 2000) (where evidence shows that drug transactions were either perpetrated on real property or arranged from real property, substantial connection between real property and drug crimes is established).

Thompson has provided no evidence to the contrary. Thompson generally denied the allegations of the Complaint in his answer, but asserted no affirmative defenses. 56.1 Statement, Ex. 4. In automatic discovery under Fed. R. Civ. P. 26, Thompson identified only himself and the keeper of records of GMAC Mortgage Corporation as individuals likely to have discoverable information which may support his claims or defenses, and provided no documents. Id., Ex. 6. Further, Thompson has declined to answer interrogatories and document requests propounded to him by the United States, including requests for information concerning the denials and allegations in his claim and/or answer in this case, as well as information which might

<mark>13</mark>

support any contention that the Defendant Property was not used or intended to be used to facilitate illegal drug trafficking activities.[3]  Id., Ex. 5.

Finally, at his deposition in this matter, Thompson asserted his Fifth Amendment privilege not to answer any questions regarding the factual basis of this forfeiture action.  Id. ¶ 66. The Fifth Amendment to the Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In the criminal context, this has been interpreted to prohibit the trier of fact from drawing any adverse inferences as a result of the defendant's refusal to testify.  Carter v. Kennedy, 450 U.S. 288, 305 (1981).  In the civil context, however, different rules apply.  While a party to a civil proceeding has a Fifth Amendment right against self-incrimination, "litigants denied discovery based upon an assertion of the privilege may ask the court or trier of fact to draw a negative inference from the invocation of that right."  Baxter v. Palmigiano, 425 U.S. 308, 318-20 (1976). Indeed, the First Circuit has held that a district court is "entitled to draw a negative inference" where, as here, a

---

[3] Counsel for the United States conferred with Thompson's counsel regarding Thompson's failure to respond to discovery. See Affidavit of Kristina E. Barclay, submitted herewith.

litigant has refused to respond to questions in a deposition based on its Fifth Amendment privilege against self-incrimination. Federal Deposit Insurance Corp. v. Elio, 39 F.3d 1239 (1st Cir. 1994) (citing Baxter, 425 U.S. at 318).

It is true that this Court is not *required* to draw a negative inference from Thompson's assertion of his Fifth Amendment privilege. See, e.g., In re Carp, 340 F.3d 15, 23 (1st Cir. 2003). However, Thompson had ample opportunity to move this Court for a stay of this action, or for a protective order limiting the disclosure of discovery in this action to the Court and the parties.[4] Thompson has done neither; instead, he has chosen to proceed with this action parallel to his state criminal case. Accordingly, the Court should exercise its discretion to draw a negative inference from Thompson's refusal to participate in civil discovery, and in particular his refusal to answer questions regarding the basis for this action based on his Fifth Amendment privilege against self-incrimination.

The uncontroverted evidence alone establishes, by a preponderance of the evidence, that Thompson has committed violations of 21 U.S.C. §§ 841(a), 846 and 856. The evidence further establishes, by a preponderance of the evidence, that the

---

[4] Thompson does not face any federal criminal charges in connection with the events that form the basis of the Complaint.

Defendant Property is substantially connected to Thompson's criminal activity. Together with the negative inference this Court is permitted to draw - and, under the circumstances of this case, should draw - from Thompson's refusal to answer deposition questions regarding the basis for forfeiture, the evidence in this case overwhelmingly establishes, by a preponderance of the evidence, that the Defendant Property is forfeitable to the United States under 21 U.S.C. § 881(a)(7).

## CONCLUSION

WHEREFORE, the Court should enter judgment in favor of the government, forfeiting the Defendant Property to the United States.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
KRISTINA E. BARCLAY
Assistant U.S. Attorney
United States Courthouse
One Courthouse Way
Suite 9200
Boston, Massachusetts 02210
(617)748-3100

Dated: May 12, 2005