UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>v.<br><br>99-101 LONGFELLOW ROAD,<br>WORCESTER, MASSACHUSETTS,<br>            Defendant.<br>_____<br>LOUIS THOMPSON,<br>            Claimant. | )<br>)<br>)<br>) Civil Action No. 03-12378-MLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### UNITED STATES' LOCAL RULE 56.1
### STATEMENT OF UNDISPUTED MATERIAL FACTS
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, the United States respectfully submits this Statement of Undisputed Facts in Support of Its Motion for Summary Judgment.

### THE PARTIES AND PROCEEDINGS

1.  The defendant in the above-captioned case is the real property located at 99-101 Longfellow Road, Worcester, Massachusetts, including all buildings, appurtenances, and improvements thereon, as described in more detail and recorded in the Worcester County Registry of Deeds at Book 16257, Page 98 (the "Defendant Property"). See November 25, 2003 Verified Complaint for Forfeiture In Rem (the "Complaint"), attached as Exhibit 1.

2.  The Defendant Property is the subject of an in rem forfeiture action based on information gathered through confidential informants, controlled narcotics purchases, and the

execution of a search warrant and subsequent arrest of Louis Thompson on September 9, 2003.  See Affidavit of Darnell McGee, attached as Exhibit 1-A.

   3.   The Complaint, filed on November 25, 2003, seeks forfeiture of the Defendant Property pursuant to 21 U.S.C. § 881(a)(7) on the grounds that it constitutes "real property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846, and/or 856."  Ex. 1, ¶ 4.

   4.   On January 28, 2004, this Court found probable cause for forfeiture of the Defendant Property based on the Complaint, and issued the forfeiture Warrant and Monition, directing the United States Marshals Service to publish and serve the notice of forfeiture.  See Warrant and Monition, attached as Exhibit 2.

   5.   On May 10, 2004, Louis Thompson ("Thompson") filed a Verified Statement of Interest in this action.  See Louis Thompson's Verified Statement of Interest, attached as Exhibit 3.

   6.   On May 10, 2004, Thompson filed an answer.  See Louis Thompson's Party in Interest Answer to Complaint, attached as Exhibit 4.

   7.   On January 11, 2005, the United States served interrogatories and document requests on counsel for Thompson. See United States' First Request for the Production of Documents and First Set of Interrogatories to Claimant Louis Thompson,

attached as Exhibit 5.

8. On January 12, 2005, Thompson served automatic disclosures pursuant to Fed. R. Civ. P. 26(a). See Automatic Disclosures of Mortgage Electric Registration Systems, Inc. as Nominee for GMAC Mortgage Corporation[1], attached as Exhibit 6.

### FACTS

9. On or about August 13, 2003, a confidential informant ("CI1") began providing information about illegal narcotics activity in Worcester to Officer Darnell McGee of the Worcester Police Department Vice Squad (the "WPD Vice Squad"). See Affidavit of Darnell McGee, attached as Exhibit 1-A, ¶ 5.

10. On or about August 18, 2003, CI1 informed Officer McGee that CI1 had been buying large amounts of rock cocaine from a Jamaican male CI1 knew as "Rat" for the last several months at all hours of the night and day. Ex. 1-A, ¶ 5.

11. CI1 stated that "Rat" was supplying large amounts of crack cocaine to other smaller level cocaine dealers in Worcester. Ex. 1-A, ¶ 5.

12. CI1 stated that it had purchased amounts of rock cocaine, packed in knot-tied plastic baggies, from "Rat" ranging from a quarter of an ounce to an ounce, at prices ranging from

---

[1] The automatic disclosures attached as Exhibit 6 were served by Thompson's counsel and they purport to be Thompson's automatic disclosures, despite the misleading title. See Ex. 6, p. 1 ("... Louise [sic] Thompson, hereby submits its Automatic Disclosures ...").

$250 to $1,000.  Ex. 1-A, ¶ 5.

   13.  CI1 also stated that "Rat" delivered cocaine using a gray Honda.  Ex. 1-A, ¶ 5.

   14.  CI1 would call "Rat" on his cell phone, (774) 249-3187 and "Rat" would meet CI1 at a predetermined location.  Ex. 1-A, ¶ 5.

   15.  "Rat" was positively identified by CI1 and through inquiries of the Massachusetts Registry of Motor Vehicles and the criminal records Master Card File as Thompson.  Ex. 1-A, ¶ 6.

   16.  Thompson's nickname is "Rat."  Transcript of April 14, 2005 Deposition of Louis Thompson, attached as Exhibit 7, 5:19-23.

   17.  Thompson was born in Jamaica.  Ex. 7, 7:18-19.

   18.  Thompson owns a business called Maytag Just Like Home Laundromat, a/k/a Maytag Laundromat, located at 221 Chandler Street, Worcester, Massachusetts (the Laundromat").  Ex. 1-A, ¶¶ 4, n.1 and 6; Ex. 7, 13:9-24.

   19.  The Laundromat has owned a gray Honda Accord bearing Massachusetts Registration number 1470RP (the "Accord") since January 2003.  Ex. 7, 19:5-20:6; Ex. 1-A, ¶ 4, n.1.

   20.  Thompson lived in the first-floor apartment of the Defendant Property from 1993 through October or November 2003.  Ex. 7, 9:4-10, 12:5-11, 13:5-6.

### First Controlled Purchase

21. On or about August 18, 2003, CI1, at the direction of officers from the Vice Squad, engaged in a controlled purchase of narcotics from Thompson. Ex. 1-A, ¶ 7.

22. CI1 contacted Thompson by cell phone and arranged for the purchase of cocaine at a location in Worcester. Ex. 1-A, ¶ 7.

23. CI1 was driven to this area, and officers observed Thompson arrive in the Accord. Ex. 1-A, ¶ 7.

24. Officers watched Thompson exit the Accord and give CI1 an amount of crack cocaine in a knot-tied plastic bag in exchange for United States currency. Ex. 1-A, ¶ 7.

### Second Controlled Purchase

25. On or about August 20, 2003, CI1, at the direction of officers from the Vice Squad, engaged in a second controlled purchase of narcotics from Thompson. Ex. 1-A, ¶ 8.

26. WPD Vice Squad Officer Patrick Moran had established surveillance of the Defendant Property. Ex. 1-A, ¶ 8.

27. After Officer Moran established surveillance of the Defendant Property, CI1 contacted Thompson by cell phone and arranged for the purchase of cocaine at a location in Worcester. Ex. 1-A, ¶ 8.

28. CI1 was driven to the location in Worcester. Ex. 1-A, ¶ 8.

29. A short time later Officer Moran observed the Accord arrive at the Defendant Property with one male operator. Ex. 1-A, ¶ 8.

30. The Accord pulled to the rear of the property out of Officer Moran's sight, and after approximately five to seven minutes, Officer Moran observed the same vehicle leave the Defendant Property with one black male operator. Ex. 1-A, ¶ 8.

31. A short time later, Officer McGee observed Thompson arrive in the Accord at the location determined by Thompson. Ex. 1-A, ¶ 8.

32. Officers observed Thompson exit the vehicle and give CI1 an amount of crack cocaine in a knot-tied plastic bag in exchange for United States currency. Ex. 1-A, ¶ 8.

**Third Controlled Purchase**

33. Between August 26 and August 29, 2003, CI1, at the direction of officers from the WPD Vice Squad, engaged in a third controlled purchase of narcotics from Thompson. Ex. 1-A, ¶ 9.

34. WPD Vice Squad officers established surveillance of the Defendant Property. Ex. 1-A, ¶ 9.

35. After WPD Vice Squad officers established surveillance of the Defendant Property, CI1 contacted Thompson by cell phone and arranged for the purchase of cocaine at a location in Worcester. Ex. 1-A, ¶ 9.

36. CI1 was driven to the location in Worcester. Ex. 1-A,

¶ 9.

37.  Approximately ten minutes later, WPD Vice Squad officers observed the Accord arrive at the Defendant Property. Ex. 1-A, ¶ 9.

38.  After a short time, the Accord left the Defendant Property and WPD Vice Squad officers followed it to the location determined by Thompson.  Ex. 1-A, ¶ 9.

39.  Officers observed Thompson exit the vehicle and give CI1 an amount of crack cocaine in a plastic bag in exchange for United States currency.  Ex. 1-A, ¶ 9.

**Fourth Controlled Purchase**

40.  Between September 6 and September 9, 2003, CI1, at the direction of officers from the WPD Vice Squad, engaged in a fourth controlled purchase of narcotics from Thompson.  Ex. 1-A, ¶ 10.

41.  WPD Vice Squad members established surveillance at the Defendant Property and at the Laundromat.  Ex. 1-A, ¶ 10.

42.  CI1 contacted Thompson by cell phone and arranged for the purchase of cocaine at a location in Worcester.  Ex. 1-A, ¶ 10.

43.  CI1 was subsequently taken to the Worcester location by WPD Vice Squad officers.  Ex. 1-A, ¶ 10.

44.  Approximately fifteen minutes later, Officer Moran observed Thompson exit the Laundromat and enter the Accord.  Ex.

1-A, ¶ 10.

45. Officers followed the Accord to the Defendant Property, and observed the Accord pull to the rear of the property. Ex. 1-A, ¶ 10.

46. After approximately five minutes, the Accord left the Defendant Property and WPD Vice Squad officers followed it to the location determined by Thompson. Ex. 1-A, ¶ 10.

47. Officers observed Thompson exit the vehicle and give CI1 an amount of crack cocaine in a plastic bag in exchange for United States currency. Ex. 1-A, ¶ 10.

48. WPD Vice Squad Officer James O'Rourke received information from a confidential informant ("CI2") corroborating the information provided to Officer McGee by CI1. Ex. 1-A, ¶ 11.

49. CI2 stated that it was also buying cocaine from a Jamaican male known to CI2 as "Rat." Ex. 1-A, ¶ 11.

50. CI2 stated that it would call (774) 249-3187 and arrange for cocaine purchases. Ex. 1-A, ¶ 11.

51. CI2 also stated that it has on occasion purchased cocaine from "Rat" out of the first-floor apartment at the Defendant Property. Ex. 1-A, ¶ 11.

52. CI2 further stated that "Rat" has delivered cocaine to CI2 in a gray Honda Accord. Ex. 1-A, ¶ 11.

53. CI2 positively identified "Rat" as Thompson. Ex. 1-A, ¶ 11.

54. On August 26, 2003, CI2 told Officer O'Rourke that it had purchased cocaine from Thompson out of the first-floor apartment at the Defendant Property within the prior two weeks. Ex. 1-A, ¶ 11.

55. On September 9, 2003, the Worcester District Court issued a search warrant for Apartment 1 of the Defendant Property, including, <u>inter alia</u>, all cellars and storage spaces associated with Apartment 1.  Ex. 1-A, ¶ 12.

56. On September 9, 2003, at approximately 10:40 p.m., members of the WPD Vice Squad executed the search warrant for the Defendant Property.  Ex. 1-A, ¶ 14.

57. Four males were discovered in the apartment: Patrick Gordon, Mark Stephens, Damian Campbell and Sean Barrett.  Ex. 1-A, ¶ 14.

58. During the search of the Defendant Property, officers recovered, among other things:

    a. a number of sandwich bags containing a white powder substance;

    b. a number of sandwich bags containing pieces of a rock-like substance;

    c. one Banknorth money envelope and other paperwork addressed to "Rat";

    d. $36,511.00 in United States currency;

    e. one bottle of creatine powder;

  f. one bottle of inositol powder;

  g. one Tanita scale;

  h. narcotics packaging materials, including sandwich sized plastic bags, some with cut corners and some containing residue;

  i. one .45 caliber Colt semiautomatic handgun loaded with seven live cartridges;

  j. one .357 caliber Colt revolver, loaded with six live cartridges;

  k. one .357 caliber Colt revolver, loaded with thirty-eight live cartridges;

  l. twenty-nine live .45 caliber cartridges;

  m. one Verizon cellular telephone;

  n. an Arch pager;

  o. three flashlights;

  p. a box containing various gun cleaning and maintenance items, including two gun cleaning kits and gun lubricants;

  q. one "roach"; and

  r. one bag of green herbal substance.

Ex. 1-A, ¶ 15.

  59. The powder and rock-like substances seized at the Defendant Property were analyzed, and certain samples were certified to contain cocaine. Ex. 1-A, ¶ 16.

60. The total weight of the cocaine found at the Defendant Property was in excess of 69.7 grams. Ex. 1-A, ¶ 16.

61. The "roach" and bag of green herbal substance were analyzed and certified to contain marijuana. Ex. 1-A, ¶ 16.

62. Thompson, Gordon and Stephens, all of whom stated that they resided in Apartment 1 of the Defendant Property, were arrested during the execution of the search warrants. Ex. 1-A, ¶ 17.

63. Thompson, Gordon and Stephens each was charged with three counts of possession of a firearm without a license, one count of possession of ammunition without an Firearms Identification card, and one count of trafficking in cocaine between twenty-eight and ninety-nine grams. Ex. 1-A, ¶ 17.

64. On November 14, 2003, Thompson, Gordon and Stephens were each indicted on one count of distribution/possession with intent to distribute twenty-eight to one hundred grams of cocaine, one count of possession of marijuana, four counts of unlawful possession of a firearm, one count of unlawful possession of ammunition, and four counts of illegally storing a firearm. Ex. 1-A, ¶ 19.

65. These criminal cases against Thompson, Gordon and Stephens currently are pending in Worcester Superior Court. Ex. 1-A, ¶ 19.

66. Through counsel, Thompson refused to answer any questions at his April 14, 2005 deposition regarding the factual basis for this forfeiture action, based on the Fifth Amendment to the United States Constitution.  Ex. 7, 16:15-25, 25:9-20, 26:15-28:12, 30:4-11.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney

By: _____
     KRISTINA E. BARCLAY
     Assistant U.S. Attorney
     One Courthouse Way
     Suite 9200
     Boston, Massachusetts 02210
Dated: May 12, 2005    (617)748-3100